RIDER v. BROWN, *et al. County Commissioners.*

[*Opinion Filed Jan. 27, 1893.*]

1. MANDAMUS—*Rule to Show Cause.*—St. § 5064, which provides that the writ of mandamus shall be issued on affidavit and motion, and shall be made returnable as the court shall direct, does not prohibit the court from making a rule to show cause, so as to enable it to determine whether any writ should issue.

2. SAME—*In What Name Issued.*—It is the better practice to issue a writ of mandamus in the name of the territory, on relation of the party interested, though, perhaps, such writ might issue in the name of such party under the code provision requiring the real party in interest to sue.

3. COUNTY COMMISSIONERS—*Duty of New Board.*—Under St. c. 52 § 2793, constituting the existing board of county commissioners of a specified county a board of canvassers, to determine the result of a special election, a new board of commissioners, elected at such election, have not the power to canvass the vote, and issue certificates of election to other persons claiming under such election.

*Error to the District Court of Canadian County, Hon. A. J. Seay, Judge.*

Mandamus by Charles Rider against George F. Brown and others, county commissioners, to compel defendants to issue to plaintiff a certificate of election to the officer of register of deeds. From a judgment in favor of defendants, plaintiff brings error. Affirmed.

*Simpson & Smedley*, for Plaintiff in Error.

*Kirkpatrick & Blake*, for Defendants in Error.

The opinion of the court was delivered by

CLARK, J: On the 11th day of March, 1891, the plaintiff in error filed his complaint in the office of the district court of Canadian county, where he represented that he was a candidate for the office of register of deeds of said county at the special election held therein

on the 3rd day of February, 1891, and that at said election he received the largest number of votes cast for any candidate for said office.   He further repre-sented, that the then county commissioners of said county, Spencer W. Johnson, George F. Brown and Thomas Jenson, canvassed the votes cast at said elec-tion, on the 19th day of February, 1891, with the above result, and that he requested said board of county commissioners to deliver to him a certificate of said election, which request was denied, and that the term of office of said commissioners expired on the 23d day of said month.

The plaintiff further alleged, that on the 23d day of said month, the above named defendants were qualified as county commissioners of said county, and that on that day he requested said defendants to deliver to him his certificate of election as register of deeds of said· county, which request was denied.   Whereupon he prayed that a writ of mandamus be issued and directed to said defendants, commanding them to issue him a certificate of election to the office of register of deeds of Canadian county, and to grant to him an early op-portunity to file his official bond.   Thereupon, an or-der was issued to said defendants, which, after reciting the above facts, commanded them to show cause at the court at El Reno, Canadian county, on the 7th day of April, 1891, why they had not issued the said certifi-cate.

The defendants thereupon filed several motions, and among others, moved the court,

"To quash the pretended writ herein granted, for the reason that neither the same nor the petition on which the same was granted, stated a cause of action against the said defendants."

The order above stated was in no sense a writ.  It was neither signed nor sealed by the clerk, and was never

intended to be a writ, but was a preliminary order to enable the defendants to show why a writ should not be issued. The motion to quash was in the nature of a demurrer to the sufficiency of the affidavit, and of the order, and was so treated by the court, and was so treated on the argument of the case, and will be so treated in this opinion.

Section 5064, of the Statutes of the Territory, is as follows:

"The writ shall be issued upon affidavit and motion, and shall be attested and sealed and made returnable as the court shall direct."

But this statute does not prohibit the court, in the first instance, from inquiring into the facts so as to determine whether any writ should be issued. A rule to show cause why a writ should not issue serves all the purposes and performs all the functions of an alternative writ, and its sufficiency, and that of the affidavit, may be tested by a demurrer or motions to quash.

The demurrer admitted the correctness of the facts stated, but simply denied their sufficiency. Clearly, if no cause of action was stated against the defendants, the proceedings should have been dismissed, unless the plaintiff asked leave to amend, and the record is silent upon that subject. The presumption then is that the plaintiff proposed to stand by his affidavit and rule to show cause as containing all the essential elements of a good complaint.

At the April term of said court for the year 1891, the aforesaid matter came up for hearing before said court, and on the hearing the following order was entered:

"The court, after being fully advised in the premises, finds the issues for the defendants and refuses to issue the peremptory mandamus, commanding said defendants to do anything prayed for in the plaintiff's petition, and does adjudge, that defendants have and recover of the plaintiff their costs in this suit paid out and expended, and have execution therefor "

To all of which the plaintiff excepted, and from which he appealed to this court.

It does not appear from the record on file, nor from the brief, on what precise point the case turned. Several questions arise, among others this one: Had the plaintiff a right of action in his own name against the defendants? The practice has been long established in mandamus actions, that the action should be brought in the name of the sovereign power, on relation or complaint of the party in interest. (Maxwell on Code Pleadings, p. 324; High on Extraordinary Legal Remedies, §§ 1 and 531.) In the United States, this writ has lost its prerogative features, but it is still classed as an extraordinary writ; and in form and name, the proceedings are somewhat in the nature of a criminal action, and is in the name of the sovereign power. (24 Howard, 66; 12 Pet. 227.)

This action was brought to obtain possession of a certificate of election as a preliminary step to the obtaining the possession of an office. By it the right to the office cannot be tried.

But *quo warranto* is a writ by which the right to the office may be tested. In this Territory, an information is substituted therefor. That has to be commenced in the name of the Territory, on the relation of the party claiming the office. The practice in Indiana, whence our statute and code came, has been to issue the writ of mandamus in the name of the state on relation of the party interested, which is the safe and better practice.

The plaintiff was the real party in interest, and as the code provides that the real party in interest shall be the plaintiff, the effect of that provision of the code on the general and long established rule, that the action shall be commenced in the name of the sovereign power on complaint of the party in interest, will not be

further noticed, and another, and perhaps a more important question will be considered.

Even if the plaintiff has a right to bring the action in his own name, had he a right of action against the defendants? Had they, as county commissioners, any power whatever to canvass the votes cast at the election in February, 1891, or to issue or cause to be issued certificates of election to candidates who received at that election the largest number of votes according to the canvass of the votes made by their predecessors. The election in question was a special election, held under Chap. 32, of the laws of Oklahoma, applicable to that election alone. Section 2791 of said chapter is as follows:

"It shall be the duty of the county clerk to furnish poll books for the use of the officers holding such election, and the election shall be conducted, notices issued, the votes counted, returns made and the votes finally canvassed, and the final result declared as provided by the laws of Nebraska, now in force in this Territory, which are hereby adopted for the purpose of the special election provided for by this act, and for no other purpose."

The Nebraska statutes on said subject are found in §§ 46 and 48 on pages 458 and 459 of those statutes, and are as follows:

"SEC. 46. Upon the reception of the returns of each election precinct, township or ward, by the county clerk, directed to him as hereinbefore provided, and within six days after the closing of the polls, he, together with two disinterested electors of the county, to be chosen by himself, shall open the poll books and from the returns therein, make abstracts of the votes cast in the following manner: * * * * * * * * * among others, of votes for county, precinct and township officers.

"SEC. 48. The county clerk shall make out a certificate of election to each of the persons having the highest number of votes for the several county, precinct and

township officers, and the members of the legislature from the county alone."

But by § 2793, of the Oklahoma Statutes, in said Chap. 32, the then county commissioners were made a canvassing board of the returns. The section is as follows:

"The board of county commissioners shall meet on the second Monday of February, 1891, and canvass the returns and declare the result of the election held under the provisions of this act, and cause certificates of election to issue to the party elected. The board of county commissioners shall meet again on the third Monday of February, 1891, to approve the bond of the officers elected at such election. The officers so elected shall enter on the duties of their respective offices on the fourth Monday of February, 1891."

And § 2795 of said Chap. 12 is as follows:

"This Act shall be held as controlling the special elections herein provided for and inducting the officers elected thereunder into office and shall not apply to any other election or effect any other act relating to that subject passed by this Legislative assembly."

The important question to be solved is, what was the legislative intent? Did it intend to invest the power in the new board as well as the old, to issue certificates to the persons who received the largest number of votes?

The old county commissioners went out of office on the fourth Monday of February, 1891, and the new county commissioners came into office on that day. The new county commissioners were sued on the 11th day of March, 1891. The special Act, (Chap. 32), does not define the duties of the new county commissioners, unless they are required to act under § 2795 aforesaid. The duties of county commissioners are generally defined in Chap. 34 of the Statutes (§§ 1797 to 1847), but they are not thereby made canvassing officers, nor are they made canvassing officers by the general elec-

tion laws found in § § 2796 to 2859; but by § 2810 the county clerk and two persons by him appointed shall constitute a board of election commissioners with full powers to prepare ballots and discharge a great variety of other duties, but do not seem to have the powers of a canvassing board. Nor do we find that the county clerk is made a canvassing officer or required to issue certificates of election under Art. 5 of Chap. 24 of the Oklahoma Statutes. It seems that congress on the 28th day of July last, entertained the idea that the Oklahoma Statutes neither provided a canvassing board or an officer to certify the result, because on that day it enacted a Statute found on page 300 of the Session Laws, of the United States, 1892, to govern at the election that was held last November. The Statute is as follows:

"The board of county commissioners of each county are hereby constituted a county canvassing board and the governor, secretary and territorial auditor, are hereby constituted a Territorial canvassing board, and said county canvassing board shall meet on the Friday next following said election, and canvass the returns and declare the result of said election, and the county clerk shall thereupon immediately issue to all county and township officers elected at said election a certificate of their election."

But that law applied only to the election held November last, by its very terms.

By the law of Nebraska made applicable to this election only by Chap. 32, it became the duty of the county clerk to make out for each of the persons elected a certificate of his election. By this same act it was made the duty of the county commissioners to meet on the second Monday of February, 1891, and canvass the returns, and declare the result and cause certificates to issue. By its terms the duty devolved on the board of commissioners then in office.

It was evidently the intention of the legislature to make the then county county commissioners, or the then clerk, together with two disinterested persons whom he should select, and we are not called upon in this action to determine which, a canvassing board with power to certify or to cause to be certified the result for that particular election, and not to extend that power to the incoming county commissioners; and not to give to the new county commissioners or clerk, or to both, general authority to canvass the returns of that election and certify the result.

It is reasonable to infer that the legislature did not intend to give to the county commissioners elected at that election any power whatever as canvassing officers of the election or any authority to cause the result to be certified. Certainly not so far as they were concerned themselves. If so, why not as to all other officers?

The affidavit and order to show cause did not state facts sufficient to constitute a cause of action against the defendants, and the judgment against the district court, refusing to issue the writ prayed for, is affirmed with costs.

All the Justices concurring.