CHESTER POWERS ET AL., APPELLANTS, V. ERNEST BUDY ET AL., APPELLEES.

FILED MAY 22, 1895. No. 6327.

1. **Religious Societies:** REGULARITY OF ECCLESIASTICAL PROCEEDINGS: COURTS: REVIEW. Courts which have no ecclesiastical jurisdiction will neither review nor revise the proceedings or judgments of church tribunals where therein are involved only questions of church discipline. Following *Pounder v. Ash*, 44 Neb., 672.

2. ———: ———: ———: ———. There exists no power in courts of equity to supply lacking remedies for the regulation of the affairs of a church organization within itself. As a voluntary association it alone has the power, and, if necessary, must itself provide means for the adjustment of all matters with respect to its internal polity which do not affect the rights of the citizen or the jurisdiction of the state.

APPEAL from the district court of Adams county. Heard below before BEALL, J.

*Ed. P. Smith, W. P. McCreary, E. B. Esher,* and *Ritchie & Esher,* for appellants.

*W. A. Bergstresser* and *A. H. Bowen, contra.*

RYAN, C.

The appellants as plaintiffs were denied the relief by them prayed in the district court of Adams county. The allegations of their petition pertinent to our review of the decree complained of on . appeal were that Shilo church at Kenesaw, in the aforesaid county, was an organization created under the laws of Nebraska in conformity with the rules and government of the Evangelical Association of North America; that said Shilo church had acquired two certain tracts of real property, on one of which was a church building, and the other was used for a parsonage; that one of the plaintiffs, Conrad Schwab, at the time of the filing of the petition, and long before, was, and had been, an ordained minister in said Evangelical Association and a member of the Platte River conference; that at the annual conference of the Platte River Conference District in 1892, presided over by S. C. Breyfogle, an acting bishop in said association, the aforesaid Conrad Schwab was duly elected and thereupon was duly assigned to preach and preside over said Shilo church. It was charged in the petition that notwithstanding the facts stated, the defendants wrongfully refused to recognize the pastoral authority of Rev. Conrad Schwab, and unless restrained would eject him from the aforesaid church property. While this language would imply that Rev. Conrad Schwab was in the possession of said church property, this is rendered perhaps more than doubtful by the following averments found in the petition, to-wit: "Plaintiffs state that the defendants were at one time members of said Evangelical Association, but that they are now in a state of rebellion against the same, against the officers thereof, and refuse to be governed by the laws of said Evangelical Association as set forth in the discipline thereof; that they refuse to recognize any of the acts of the annual conference herein mentioned; refuse to accept the minister thereat assigned, and without

any right whatever have placed in the pulpit of said church the defendant Samuel H. Dunkleberger, who is also in a state of rebellion against the said association, its officers and members, who has no right whatever to preach in said church, or preside over the congregation of said association thereat." Following the above language the averments of the petition were, in effect, that the defendants were seeking to obtain possession of the parsonage building and eject Rev. Conrad Schwab therefrom; that the defendants, with all their power, were trying to destroy the Evangelical Association, teaching doctrines and ideas contrary thereto—inciting to rebellion against said association and authority certain of its members, and to accomplish said purposes were using the property of Shilo church and diverting said property from its proper uses. The prayer of the petition was for an injunction "restraining the defendants from doing, causing to be done, or in any manner counseling others to do, each and every of the wrongs herein complained of," and for general equitable relief. The defendants, with zeal equal to that displayed by plaintiffs, answered to the extent of twenty-one pages of type-written matter, supplemented with eleven like pages of exhibits. In this answer it was asserted that neither of plaintiffs was a member of Shilo church aforesaid; that Conrad Schwab had never been a legally appointed, empowered, or qualified minister of the church described in the petition and had never been appointed by any legal or other conference. It is quite unnecessary to further summarize the contents of the answer, for already it appears that this contest was as to the right of Mr. Schwab as against Mr. Dunkleberger to officiate as pastor of Shilo church. The rival claims of right in this respect are traceable to the dispute which arose in the Evangelical Association of North America concerning the alleged suspension of Bishop Esher by a committee which, over his protest, assumed and exercised jurisdiction,

as it claimed, with the result indicated.  Previous to the
above final action by the committee, Bishop Esher came to
Beaver Crossing, Nebraska, and by virtue of his office of
bishop attempted to preside over the annual meeting of the
Platte River Conference at that place.  This body refused
to recognize him as its president, because there then existed
charges against him, and, under the provisions of the dis-
cipline of the Evangelical Association applicable in cases
where no bishop was present, there was elected an elder,
who thereupon, with the assent of all present, except
Bishop Esher and perhaps one other person, assumed to
act as president of this conference, which, among other
acts, designated Holdrege as the place for its meeting in
1891.  At the meeting held in Holdrege pursuant to above
designation, Glenville was selected as the place at which
the Platte River Annual Conference should be held in
1892.  At this conference at Glenville, Rev. S. H. Dun-
kleberger was assigned to preach and preside over the con-
gregation at Shilo, and the performance of the duties de-
volved upon him by this association were those which
plaintiffs sought by this action to prevent by injunction.
When an elder had been elected president at the annual
conference at Beaver Crossing on the assumption that no
bishop was present, Bishop Esher protested, and, finding
that he was not heeded, withdrew, after denouncing the
proceedings as without warrant.  In the *Evangelical Mes-
senger*, a journal purporting to be the organ of the above
described Evangelical Association, of date February 24,
1891, J. J. Esher, without any official designation, called
a meeting of the Platte River Conference for reorganiza-
tion and for its annual session to be held at Omaha, March
6, 1891.  At the meeting thus called Nelson was fixed
upon as the place of the annual meeting of the Platte River
Conference in the year 1892.  It was by this latter convo-
cation that Rev. Conrad Schwab was appointed preacher
of said Shilo church, and between this appointee and Rev.

S. H. Dunkleberger trouble at once began, and, though the term of appointment expired in March, 1893, the contest survives in this appeal.

By the pleadings there were presented for determination, *in limine*, the questions whether or not either appointee was a member of the general society known as the Evangelical Association of North America, and whether or not either of the parties litigant was connected therewith or were seceders from and in rebellion against it. If these propositions should be settled in such a manner as to permit of further litigation, the next question presented would be whether or not J. J. Esher was a bishop when the Platte River Annual Conference was held at Beaver Crossing, and if so, what was the effect of the irregularities which in such case must be conceded to have characterized subsequent proceedings. These are questions which must be determined by the proper authorities of the association. While they are insisted upon in this appeal, they are in fact merely incidental to the principal, and probably the only, question which we are asked to decide, and that is, who was the proper preacher to have charge of and preside over Shilo church between a day certain of March, 1892, and a corresponding day in March, 1893?

In *Pounder v. Ashe,* 44 Neb., 672, an opinion has been filed during this term in which it was held that so long as there is no infringement of the rights of a citizen and there is no conflict with the jurisdiction of the state, church associations should be free from the interference of courts where there is drawn in question only the right of such organizations to try and, if need be, expel its members for the violation of a church ordinance or law. It is quite possible that for the final determination of the unhappy controversy, to which this is a mere incident, there exists in the regulations of the Evangelical Association of North America no sufficient provision. This, if it exists, is a deficiency which can be supplied only by the association.

Courts of equity, while they may supply remedies not available in legal actions, have no jurisdiction to supplement the powers of purely voluntary associations when, through improvidence, they in practice are found inadequate. To concede that voluntary associations cannot govern themselves might present a convincing argument against allowing them at all to exist, but by no means affords a justification for placing them under the guardianship of the state through its courts. The separation of church and state cannot be too thoroughly insisted upon, and the contingency which would justify control by the latter of the affairs of the former is scarcely, if at all, imaginable. The necessity for this independence, as well as its actual existence, have been universally recognized and frequently enforced by the civil tribunals of this country. (*Connitt v. Reformed Protestant Dutch Church,* 4 Lans. [N. Y], 339; *White Lick Quarterly Meeting of Friends v. White Lick Quarterly Meeting of Friends,* 89 Ind., 136; *Shannon v. Frost,* 3 B. Mon. [Ky.], 253; *Gaff v. Greer,* 88 Ind., 122; *Chase v. Cheney,* 58 Ill., 509; *State v. Farris,* 45 Mo., 183; *Watson v. Jones,* 13 Wall. [U. S.], 679; *Pounder v. Ashe,* 44 Neb., 672.)

The decree appealed from which dissolved the injunction obtained by plaintiffs and denied the relief prayed was justified by the views expressed, and the judgment of the district court is therefore

AFFIRMED.