SIMON P. MYERS v. THE FIRST PRESBYTERIAN CHURCH OF PERRY.

(Filed July 16, 1902.)

1. ACCOUNT—Verification of Petition. To avoid necessity of proof of an account declared on in the petition and denied by the answer, it is not sufficient to verify the petition generally. The statute contemplates an account stated, duly verified as to its correctness and attached to the petition, and the petition should specially allege the correctness of the verified account so attached.

2. LIMITATIONS, STATUTE OF—Causes of Action. When a party brings his action to recover for services rendered as a minister of the gospel within the time prescribed by statute, and procures a judgment which is subsequently reversed in the supreme court, and the cause remanded for new trial, and the case is dismissed by the trial court without prejudice, and such party brings a second suit within one year from the time of the dismissal of the first cause, to recover for the same services, but in the first action he set up a contract partly written and partly oral, and in the second

relies solely upon an oral contract, such second cause of action will not constitute such a departure as will let in the statute of limitations.

3. **CONTRACT, SUIT ON—Former Pleadings.** Where the plaintiff sued upon contract, and the defendant in his answer admits the execution of the contract, and said cause is dismissed without prejudice, in a second action on the same cause of action, plaintiff may introduce in evidence in support of his allegation of contract the admissions in defendant's former pleading, and the defendant will not be permitted to contradict such admissions.

4. **DEMURRER TO EVIDENCE—Error to Sustain, When.** A demurrer to the evidence admits all the facts proven to be true, and every fact which may be reasonably and rationally inferred from the facts proven, and where there is evidence reasonably tending to establish each material averment of the petition, it is error to sustain a demurrer to the evidence.

5. **CHURCH—Obligations of.** By the laws of the Presbyterian church and the standing rules of the Presbytery of Oklahoma, the Presbytery has the right to appoint a minister of such church as a stated supply to any vacant church within its jurisdiction, and such church when accepting the services of such stated supply, becomes obligated to pay him a fair and just compensation for his services.

6. **SAME—Authority of Officers.** The Presbyterian church is governed by its own rules and laws, and the courts will give effect to them. The laws of the territory do not contravene or supplant such laws, and the trustees of an incorporated Presbyterian church have no authority *ex officio* to employ pastors or supplies for the church, or to contract for their compensation, and can only do so when authorized by a public vote of the congregation.

7. **CONTRACT—Appeal.** Where a party sues upon an express oral contract, and tries the cause upon such theory, and submits the same upon such theory, and relies thereon, and judgment is rendered against him, he will not be permitted on appeal to claim an implied contract or *quantum meruit*, but must be held on the theory on which he tried the case in the court below.

(Syllabus by the court.)

*Error from the District Court of Noble County; before John L. McAtee, Trial Judge.*

*H. A. Johnson,* for plaintiff in error.

*S. H. Harris* and *Diggs & Cress,* for defendant in error.

Affirmed in part, reversed in part, and remanded.

Opinion of the court by

BURFORD, C. J.: The plaintiff in error brought his action in the probate court of Noble county against the First Presbyterian church of Perry, Oklahoma, to recover for services rendered as "stated supply" for said church. The amended petition sets out two causes of action, one covering the period from March 16, 1894, to March 16, 1895, and the other from March 16, 1895 to September 15, 1895. The first cause of action as stated in the petition is as follows, to-wit:

"For his first cause of action plaintiff states that said defendant is a corporation existing under and by virtue of the laws of Oklahoma territory, and has at all times so existed since the 8th day of April, 1894, and doing business in the city of Perry, Noble county, Oklahoma territory, in and under the name of the First Presbyterian church of Perry, Oklahoma, and that this plaintiff was at all times hereinafter stated a duly and regularly ordained minister and qualified to serve said defendant church as stated supply and minister under the rules and regulations of said defendant church, and the rules and regulations of the Board of Home Missions of the Presbyterian church in the United States of America, and the Oklahoma Presbytery, under which rules said defendant church was controlled at all times hereinafter mentioned; and that on the 19th day of June, 1894, plaintiff was appointed stated supply to serve said defendant church by the Oklahoma Presbytery for a term of one year, beginning on the 16th day of March, 1894, and ending on the 15th day of March, 1895, and that said appointment was duly and regularly made in conformity to the rules and regulations of said board of home missions and Oklahoma Presbytery, under whose jurisdiction said defendant church was at said time, and was governed by the rules and regulations of the same; and that on or about the 21st day of June, 1894, after said appointment, said defendant church, by its duly and regularly elected, qualified and acting trustees, duly and regularly employed by oral agreement this plaintiff,

in conformity with said rules and regulations, as they had authority so to do as such trustees, under such rules and regulations to serve said defendant church as minister, stated supply and leader of the religious services of the said defendant church for a term of one year, to begin on the 16th day of March, 1894, and to end on the 15th day of March, 1895, and that said defendant church, by its said trustees as aforesaid, promised to pay this plaintiff for said services the sum of two hundred dollars, ($200), and that said contract of employment was made in all respects in conformity to the said rules and regulations governing said defendant church, as aforesaid, and that this plaintiff fully and diligently performed such services for said church, under said contract, and wholly complied with his part of the same. That at the time of said appointment said defendant church was vacant, as defined by said rules and regulations.

"That said services were reasonably worth said sum of $200, over and above the amount plaintiff was to receive during said time from the board of home missions of the Presbyterian church, in the United States of America, which was $600, and that said defendant agreed as aforesaid to pay plaintiff for said services two hundred dollars as their part of plaintiff's salary, and over and above said $600, and that said defendant received said services by and with the acquiescence and consent of its said officers and members, and with their agreement as aforesaid, and approval.

"That said defendant has paid this plaintiff on said salary the sum of $17.40, and that there is now due and unpaid the sum of $182.60, with interest thereon at the rate of 7 per cent per annum from March 15, 1895, for said services so performed by plaintiff for defendant under said contract, no part of which has ever been paid, and that said defendant had wholly failed and refused to pay the same, although often requested so to do, by this plaintiff, prior to bringing this suit.

"That all of said sum was due and unpaid on the 15th day of March, 1899, and that on or about the 7th day of Jan-

uary, 1896, plaintiff commenced in this court within due time, his action against said defendant to recover said sum of money due on said contract, as aforesaid, and obtained judgment therefor, which was afterwards appealed by said defendant to the supreme court, and by said court reversed and remanded for a new trial, and that on the 14th day of November, 1898, this court dismissed said cause without prejudice, and that on the 22nd day of July, 1899, this plaintiff commenced a new action for the recovery of said sum of $182.60 and within one year after the said dismissal of the former action, and that the plaintiff did not fail in said former action upon the merits, but failed by the case being dismissed without prejudice as aforesaid, and otherwise than upon the merits.

"Wherefore, plaintiff prays judgment for said sum of $182.60, together with interest thereon from March 15, 1895, at the rate of 7 per cent per annum, and costs of this suit."

The second cause of action was identical with the first, except as to time and amount. It was for the period of six months from March 16, 1894, to September 15, 1894, and for a balance due under an obligation to pay $100 for said time.

A demurrer was filed and overruled, and the defendant answered. The answer admits that plaintiff served the church as "stated supply" during the period claimed, but alleges that he was employed by the board of home missions of the Presbyterian church, at a stated compensation of $600 per annum, which sum was duly paid, and that the church had never agreed to pay him any sum in addition to that paid by the board of home missions. The defendant also pleaded the statute of limitations and *res judicata,* and furthermore, that by the laws and rules of the Presbyterian church, an oral contract could not be entered into between a minister and the church.

Reply was filed, setting out the record in the former suit between the same parties and some additional allegations, and on these issues the cause went to trial. Judgment was rendered in favor of plaintiff, and the defendant appealed to the district court. There the case was tried to a jury and after plaintiff had submitted his evidence, a demurrer was sustained to the evidence, and judgment given in favor of the defendant. The plaintiff appeals, and the question to be determined is whether or not the court erred in sustaining the demurrer to plaintiff's evidence.

Before entering upon a discussion of that question, it is proper to dispose of some questions raised by defendant in error. It is contended that the cause is barred by the statute of limitations, and that plaintiff is not entitled to maintain the action. Plaintiff is suing for services rendered in 1894 and 1895. The action was commenced in the probate court on July 22, 1899, and unless it comes within one of the exceptions would clearly be barred. But the plaintiff pleads and the evidence shows that he brought a prior action in the probate court to recover for the same services, which action was commenced January 15, 1896, and after having been to the supreme court, there reversed and remanded for new trial, was finally dismissed in the probate court on the 7th day of April, 1899. In July following, less than one year, this action was commenced.

Section 3895, Stat. Okla., 1893, provides:

"If any action be commenced within due time and a judgment thereon for the plaintiff be reversed, or if the plaintiff fail in such action otherwise than upon the merits, and the time limited for the same shall have expired, the plaintiff. * *

* * * may commence a new action within one year after the reversal or failure of the first."

We think it sufficiently appears from the record that the cause of action relied upon in this suit is the same as that involved in the previous action. The former case is reported in 5 Okla. 809, and the opinion in that case is made part of the record in the case before us. In that case the cause of action was for the recovery of the same sum of money, for the same services here claimed for, but the plaintiff there relied partly on the written "call," and partly on an oral contract for recovery, while in this action he relies wholly upon oral contract. The causes of action are the same, but different only in form, which does not affect the merits.

After the cause was reversed and remanded to the probate court, the cause was dismissed by the probate court without prejudice, for failure of the plaintiff to comply with a rule as to payment of costs. This did not constitute a trial of the case on, or a determination of, the merits, and hence the plaintiff had a right to bring his second action within one year from the dismissal of the first, and this was done, and the statute of limitations has not barred the right of action. Neither does the judgment in the first cause constitute an estoppel; there was nothing finally adjudicated; the merits were not involved in the dismissal, and the court expressly ordered the dismissal without prejudice.

The plaintiff in error contends that he was entitled to judgment on the pleadings because his petition was verified, and the answer of the defendant was not sworn to  The account set out in plaintiff's petition is not the character of account that is contemplated in sec. 3986, Stat. 1893. In

order to dispense with proof of an account, alleged upon one side and denied upon the other, it is not sufficient to verify generally the petition. The statute says: "The correctness of any account duly verified by the affidavit of the party, his agent or attorney, shall be taken as true, unless the denial of the same be verified by the affidavit of the party, his agent or attorney." This contemplates a stated account duly verified, and the petition must allege the correctness of the verified account attached. (*Cook et. al. v. Burnham et. al.*, 3 Kan. App. 27.)

This brings us to the consideration of the evidence on the demurrer. A demurrer to the evidence not only admits the facts as proven to be true, but admits such facts as may be reasonably and rationally inferred from the facts proven. If there is evidence fairly tending to establish each material averment of the petition, it is error to sustain a demurrer to plaintiff's evidence. (*Jaffray v. Wolf*, 1 Okla. 249, 50 Pac. 992.)

The evidence shows that the plaintiff, Myers, was a regularly licensed and ordained minister of the Presbyterian church, in good standing, and of several years' experience. Shortly after the settlement of the city of Perry, the First Presbyterian church of Perry was organized and admitted into the Presbytery of Oklahoma. It was also incorporated under the laws of the Territory of Oklahoma. The plaintiff ministered to the spiritual wants of the church and assisted them in raising money to erect their church building. He held a commission from the board of home missions of the Presbyterian church of the United States, but was not assigned to any charge as pastor or supply. The Perry church was vacant, and was desirous of employing a pastor, and on April

9, 1894, executed a "call," in form as prescribed by the rules of the Presbyterian church, in which the church agreed to pay him $200 per year in addition to any sum the board of home missions should appropriate. The call was duly submitted to the Oklahoma Presbytery, and the Presbytery rejected the call, and recommended Rev. James Farr, as supply to the church. The church declined to receive Dr. Farr, and prepared and submitted their grievance to the Presbytery at a called meeting in June, 1894. At this meeting of the Presbytery, the request of the Perry church for the installation of Rev. Myers, was denied, and Rev. Myers was appointed stated supply for the Perry church for one year, beginning March 16, 1894, and the Presbytery recommended the field to the board of home missions for aid to the amount of eight hundred dollars per year. Rev. Myers continued to minister to the church as stated supply during the period the Presbytery had designated, and the church accepted his services, and during the period paid him the sum of $17.40. The board of home missions, by reason of financial embarrassment, only allowed and paid him six hundred dollars instead of eight hundred dollars, as requested by the Oklahoma Presbytery.

At the end of the first year the Oklahoma Presbytery again appointed Rev. Myers "stated supply" to the Perry church at a salary of $450, the church to raise $100 and the board of home missions was requested to pay $350. Under this assignment the plaintiff again renewed his ministerial labors during the six months designated by the Presbytery. For this service the board of home mission in New York paid him $300, and the church paid him $77.50. The church after the first assignment of Rev. Myers as stated supply made their application to the board of home missions at New York for

aid, in which they stated that they would pay two hundred dollars toward the salary of their minister, and requested aid in the sum of eight hundred dollars. In answer to this the board allowed six hundred dollars aid, on the condition that the church raise the balance of four hundred dollars, to make the salary one thousand dollars. The trustees of the church in conversation with Rev. Myers agreed to pay him two hundred dollars for the first year and one hundred dollars for the last six months, but it is not shown that the trustees ever acted on this matter in session or that the membership of the church in session ever authorized such action. In the first action the defendant filed its\answer, in which it specifically admitted that it agreed to pay Rev. Myers the sum of one hundred dollars as stated supply for the last six months, and that he performed the services required of him, but it also alleged that he had collected divers sums from various persons and failed to account for the same, and demanded an accounting. This answer was introduced in evidence by the plaintiff, and is a written admission, made in a judicial proceeding, and is conclusive on the church, and clearly establishes the allegation of a contract to pay one hundred dollars for the second six months' services by Myers.

In the absence of any showing that this sum had been paid, Myers was entitled to a judgment against the church for the balance claimed by him on last six months' salary—$22.50 and interest. The demurrer admitted this as a fact, and this alone made it error to sustain the demurrer.

As to the first cause of action more difficulty is presented. The laws of this territory authorize an incorporated church or religious association to elect trustees who take and hold its property, and may make and enter into contracts respecting

its temporal officers. But it is not the policy of our law to interfere with the spiritual or domestic affairs of the church. The law recognizes the right of religious organizations to enact and adopt their own rules, laws and regulations for the conduct of their affairs. The selection and employment of pastors and officers of the church belongs to the society, and may be done in such manner as its laws prescribe.

The Presbyterian church is a congregational body; its powers are vested in its membership, and may be executed through its delegated authority. The selection of a pastor is primarily in the congregation, but must be approved by the Presbytery and accepted by the minister selected, and its trustees are not invested with any power *ex officio* to employ ministers, or to contract as to salaries. This power may be exercised by them only when authorized by direct vote of the congregation composed of those who are authorized by the laws of the church, to participate in such meetings. (Book 1, chap 15, Form of Government; Confession of Faith, page 405.)

But a stated supply is not a pastor; his selection is made by the Presbytery. He may be commissioned as a missionary by the mission board, and his compensation fixed in whole or in part by the board. It is not the policy of this board to aid a church which will not help itself; hence, each church receiving aid is required to give something for the support of its minister or supply. Stated supplies are under the charge and control of the Presbytery in whose jurisdiction they work, and have only such rights and prerogatives as may be expressly conferred on them by the Presbytery. (Moore's Presbyterian Digest, page 476.)

It is also one of the laws of the Presbyterian church, that: "Each Presbytery shall, at its semi-annual meeting, prepare

a list of its vacant churches and unemployed ministers who are competent for service, and who have not been relieved from the active work of the ministry. * * * * The Presbytery shall also require of each of the churches on the list so prepared, a report as to the amount it is able to contribute for the support of the preaching of the gospel during the ensuing six months, to the end that the Presbytery, or its committee, may determine the number of appointments to be made for it from the list of supplies." (Presbyterian Digest, 56 A. p. 498.)

By section 2, article 7, standing rules of the Presbytery of Oklahoma, it is specifically provided:

"Vacant churches must apply to the Presbytery or the home mission committee for permission to employ a supply and no church shall be permitted to employ a stated supply from year to year without the consent of the Presbytery.

"Sec. 3. Vacant churches shall pay the supplies serving them by appointment of Presbytery a fair and just compensation."

This is the law controlling and governing the relations between Rev. Myers and the First Presbyterian church of Perry. It is binding both upon the minister and the church, and the courts will uphold and enforce it. When the church accepted Rev. Myers as its stated supply in the absence of any legal contract, it became obligated to pay him a fair and just compensation for his services. If it could obtain aid from the home mission board, this was its right, and after applying the amount paid by such board, if there was still a balance due, to make a fair and just compensation, it was bound and obligated to pay such balance.

We are of the opinion that under the evidence in this case, no contract was made which was binding on the church, as to amount of salary, and that the plaintiff cannot recover upon express contract. He has elected to sue upon an express oral agreement made with the trustees; if they made such agreement, good morals would require them to carry it out, but the law of the church does not recognize it, and it is not shown that it was authorized by the session, and hence he cannot recover upon the contract set up in the first cause of action in his petition. But, if he had brought his action for the fair and reasonable value of his services under sec. 3, chap. 7, *supra,* and proved that his services were reasonably worth more than he had been paid, he could then have recovered without any express contract. If it had been shown that the amounts paid Myers on the two hundred dollars was paid with the full knowledge and concurrence of the members of the church, it might have been treated as a ratification of the alleged contract with the trustees. Evidently the members knew of the statement made to the board of home missions that the church would pay two hundred dollars on Rev. Myers' salary; they also knew that he failed to get the sum from the board asked for his aid; they knew that the church had represented that his salary would be one thousand dollars; they also knew he was only getting six hundred dollars. No doubt they knew he had been promised the additional two hundred dollars, but by reason of lack of a contract entered into according to the rules and laws, it seeks to avoid payment. When the Presbytery designated Myers as a stated supply, and the church accepted his services under the rule of the Presbytery, which is binding on the church, there arose an implied contract to pay him a fair and just compensation. If he has received already a fair and just compensation, then he is entitled to no more.

The plaintiff has indeed been extremely unfortunate in his selection of remedies. His first suit was on a contract both oral and written; in this he was defeated. His present suit is on oral contract; he fails to establish this on his first cause of action, and would have failed on the second if defendants had not made the unfortunate admission in their former pleading. His action should at first have been on the implied contract to recover reasonable compensation.

The demurrer in this cause was to each cause of action separately. The demurrer was properly sustaind to the evidence as to the first cause of action, and was improperly sustained as to the second cause of action.

The judgment of the district court, sustaining the demurrer to the evidence in support of the first cause of action, will be affirmed, and the judgment sustaining the demurrer to the evidence in support of the second cause of action, will be reversed, and the cause remanded for a new trial on the second cause of action, the defendant in error to pay the costs in this court.

Irwin, J., absent; Hainer, J., not sitting; all the other Justices concurring.