### WOODWORTH v. WOODWORTH.

No. 24410. May 21, 1935.

Rehearing Denied July 16, 1935.

Application for Leave to File Second Petition for Rehearing Denied Sept. 25, 1935.

L. D. Mitchell, for plaintiff in error.

Tom Chambers, Jr., for defendant in error.

PER CURIAM. Allen Woodworth, the plaintiff in error, was found guilty of contempt in the district court of Oklahoma county on July 23, 1932, and was sentenced to the county jail of Oklahoma county for a period of 60 days, or to pay the sum of $400 immediately, to purge himself of said contempt.

The contempt proceedings originated in an action in said district court by Willa Woodworth, as plaintiff, against Allen Woodworth, as defendant, for divorce, alimony, and the custody and allowance for the maintenance of a minor child. On September 20, 1919, a journal entry was filed, reciting that on September 17, 1919 the case came on for trial; that the defendant had filed his said appearance and waiver of notice dated July 11th, and made no further appearance in the cause and failed to appear at the hearing and was adjudged in default. Upon the evidence introduced by the plaintiff, the court made its findings generally for the plaintiff, awarded her a decree of divorce, the custody of her minor child, Allen Woodworth, Jr., and ordered the defendant to pay $25 per month to the plaintiff for the support and maintenance of said minor child until he should reach his majority; and a further allowance of alimony to the plaintiff in the sum of $25 per month, so long as she should remain unmarried and without other limitations of time or of total amount.

Between the date of said judgment for divorce in 1919 and the institution of the contempt proceedings now in issue, which were instituted by an application for citation filed July 21, 1930, numerous proceedings were taken by the plaintiff, of a civil nature, to collect the payments due, and certain collections were made at various times, which the plaintiff stated amounted to $250 or $300. The evidence is not clear or satis-

factory as to the total payments or as to the exact delinquency at any particular time. It is fairly inferable from the evidence that with the passing of eleven years the amount of the delinquency grew into larger figures. The defendant in error testified that for several years prior to the contempt proceedings, either trifling sums or nothing had been paid on the judgment.

On July 21, 1930, following certain other citations in the same year, on which no action seems to have been taken, the defendant in error filed the particular application for citation upon which judgment appealed from must be based. This application, after reciting certain provisions of the original judgment dated September 17, 1919, sets out the following:

"That the defendant, Allen Woodworth, is in contempt of court in this, that the said Allen Woodworth has always failed and refused to make any payments to this plaintiff in compliance with said order, since the first day of August, 1923; that said defendant, Allen Woodworth, is in default in said payments in the sum of two thousand and seventy-five dollars ($2,075)."

The citation issued thereon recites the entering of the judgment of September 17th, and states, as the matter of contempt, that the defendant has failed and refused to make any payment since the first day of August, 1923, but makes no mention of delinquency stated to be $2,075 as of July 21, 1930; the citation thereupon directed the plaintiff in error to appear personally before the court at a time stated, to show why he should not be adjudged in contempt. The cause came on for trial before a jury upon the application and citation aforesaid; and the jury returned a verdict, finding the defendant guilty of contempt. Following the motion for new trial and overruling of the same, the court entered its judgment and sentence of conviction against the defendant, in which the court fixed the punishment at 60 days in jail or to pay the sum of $400 to the clerk of the court, to purge himself of said contempt. Neither the application nor the citation nor the sentence shows whether the pecuniary penalty was intended or sought to be applied for the benefit of the judgment creditor or whether assessed as a fine for contumacious contempt. The sum of $400 assessed by the court does not bear relation to any particular amount claimed by the plaintiff or established by the evidence as due, and we must take it that it was assessed by the court in the nature of a punishment to

vindicate the authority of the court as in cases of criminal contempt. The plaintiff in error served notice of appeal upon the county attorney as well as upon the plaintiff's attorney, besides giving notice of appeal in open court as in civil cases.

The plaintiff in error makes several assignments of error which it is not necessary to discuss, because in our view the case turns upon the third and sixth assignments, i. e.:

"(3) Said court erred in that the verdict of the jury was not sustained by sufficient evidence and is contrary to the evidence."

"(6) Error on the part of the court in not sustaining the demurrer of Allen Woodworth to the evidence."

We agree with the position of the trial court and the second proposition in the brief of the defendant in error, that the matters urged to impeach the original judgment, dated September 17, 1919, were not competent for that purpose. The plaintiff in error alleged that there was fraud in the rendition of that judgment for the reason that it was entered in his absence and contained provisions for alimony payments contrary to an agreement made with the defendant in error at the time he consented to enter his appearance and waive notice of hearing. However, he has never made any direct or permissible form of attack upon that judgment, and by his own subsequent remarriage, he has acquiesced therein. It seems established in principle and authority that his objections to the judgment cannot be considered in this form of collateral attack. Cummings v. Huddleston, 99 Okla. 195, 226 P. 104.

The assignments of errors numbered 3 and 6 present a more serious question. The plaintiff in error complains that there was no allegation in the pleadings nor proof at the trial of willful default. The instructions of the court properly added the qualifications, not expressed in the complaint, that the delinquency must be willful, in the sense that the defendant must fail to comply according to his ability or else not exercise reasonable and bona fide efforts to comply with the order of the court consistent with his earning ability. The defendant in error tacitly admits that the default must be willful, but simply stands upon the allegation of the words **"failed and refused"** as sufficient statement of the charge against the defendant on the issue of willfulness. It is obvious, of course, as counsel states, that the act of refusal is a willful act, but, coupled with an inability to pay or to se-

cure the means of payment, would not be contumacious or contemptuous to the authority of the court.

The case of Morgan v. National Bank of Commerce, 90 Okla. 280, 217 P. 388, decided by this court, states the rules and an application of the rules in contempt cases that we deem govern the case at bar.

Under our statute contempts are classified only as direct and indirect contempts. There is no statutory classification of criminal and civil contempts, although the latter are well known to the common law and their nature defined in that opinion. Therefore, we are obliged to follow the statutory requirements which are prescribed for indirect contempts whether the purpose of this proceeding might be civil or criminal in its nature. Section 1697, C. O. S. 1921, defines "indirect contempt" of court as:

"**Willful** disobedience of any process or order lawfully issued or made by court."

Section 1699, C. O. S. 1921, provides:

"In all cases of indirect contempt, the party charged with contempt shall be notified in writing of the accusation and have a reasonable time for defense; and the party so charged shall upon demand have a trial by jury."

Section 1700:

"Whenever a person shall be imprisoned for contempt, the substance of the offense shall be set forth in the order for his confinement."

The punishment provided is fine or imprisonment or both at the discretion of the court. These sections are all a part of the Code under Crimes and Criminal Procedure. It is obvious that this statute, providing for punishment as in the case of criminal offense, is designed to give the defendant the benefit of certain rules of pleading and practice applicable in criminal cases. In the case cited, an objection had been made to the introduction of any evidence because of the insufficiency of the complaint. We do not have such objection, however, in the instant case. The court there said (Morgan National Bank of Commerce, supra):

"An examination of the complaint filed discloses that it is impossible to tell from its allegations whether or not the respondent was being proceeded against by a civil proceeding in nature for the use and benefit of the plaintiff in the action, or for the vindication of the dignity of the court. Such a complaint is fatally defective. Under the statute the respondent is entitled to know what kind of proceeding he is to defend, whether a civil or a criminal proceeding;

and the purpose for which he is to be subjected to punishment. * * * Under the statute, supra, it should allege willful disobedience of the order or willful resistance to its execution. * * * And facts should be alleged in the complaint such as to show a willful disobedience of the court's order. * * *"

It has been noted that the complaint in this action neither alleged willful disobedience nor did it allege facts such as to show willful disobedience. Likewise, the prayer of the application for citation is subject to the same comment as made by the court in the case cited as follows:

"It is impossible to determine from this prayer whether the proceeding was being prosecuted for the use and benefit of the plaintiff to the action, or to vindicate the dignity of the court. However, the prayer of the petition indicates that the punishment requested was to be punitive in its nature and for the vindication of the court. If the relief was to be remedial, and for the benefit of the plaintiff in the action, the prayer of the petition should ask that the respondent be fined for his use and benefit. The petition was styled the same as the civil action. If it was intended as a prosecution in vindication of the court's power and dignity, it should have been styled, State of Oklahoma v. N. C. Morgan. * * * The respondent should not have been left in doubt whether the contempt proceedings were instituted for remedial relief in aid of private litigation, or as a public prosecution to vindicate the court's authority. Gompers v. Buck Stove & Range Co., 221 U. S. 418, at 441, 55 L. Ed. 797.

"The reason for the rule is apparent, the accused is entitled to be informed of the nature of the charge against him and be able to determine whether it is a charge or a civil proceeding."

As stated in that case likewise:

"It is impossible to determine from the record whether this fine was to be paid for the use and benefit of the plaintiff in the action; * * * and if so whether the fine would be excessive measured by any pecuniary injury the plaintiff may have suffered. * * *"

As in the cited case, the punishment imposed was punitive in its nature and such punishment as was appropriate to a criminal contempt proceeding.

Therefore, although neither the complaint nor instructions were objected to in a proper manner, the complaint, instructions, and the evidence must be considered together to determine whether the case was fairly submitted to the jury consistently with sub-

stantial rights of a defendant in a criminal proceeding.

We are unable to determine from the entire record whether defendant was charged with or convicted of one offense, as of July 21, 1930, or about 84 separate and distinct offenses, one in each month since August, 1923, and thence to July 21, 1930. The complaint alleged failure to pay installments due over that entire period, and the final failure to pay $2,075 in accumulations past due. To have opportunity for defense, the defendant would have to know from the charge at what particular time he was alleged to be delinquent and contumacious, and be prepared to show his means or earning ability at such time or times, as bearing on the issue of intent and willfulness. The trial court, in recognition of such matter, ruled at the beginning of the trial:

"I am trying it as of that date, July 21, 1930. Nothing will be heard **subsequent** to that date. Confine it (the evidence) to that time; what was unpaid **at that time.**"

Thus far the issue is clear. But in his instructions the court opened up all of the vagueness and duplicity involved in the complaint by the following charge:

"This case is tried and is to be considered by the jury as of July 21, 1930; and you must consider the matter under the evidence as of that date **and prior thereto.**"

The last three words, coupled with his prior ruling to put in nothing subsequent to July 21, 1930, permitted the jury to consider testimony as to the conditions of default at any time for seven years **prior thereto.**

The testimony does not show that the parties or their attorneys knew what the issue was as attempted to be explained by the court. Certainly, neither of the parties confined their proof to the facts as of July 21, 1930. The complainant did not attempt to prove the amount due on July 21, 1930, and she introduced no rebuttal whatever as to the financial means or earning ability of the accused on July 21, 1930. Quite to the contrary of the court's instructions, but without objections by any one, testimony was introduced to show delinquency on the one hand and payments or credits on the other hand, over a period of eleven years. Neither of the parties could remember the amounts due at various times when the complainant collected from $50 to $75 at a time by successive garnishments or payments made by accused into court during several years, from 1922 to 1924. She admitted receiving from $250 to $300 in all.

The accused testified as to earning ability and general financial circumstances over the entire period of time, tending to show that he had worked or been employed to the full extent of his opportunities for work. We cannot say that the evidence, therefore, was directed to any particular time or occasion when the willful intent or the male fides on part of accused was shown by any conduct amounting to contumacious disregard of the court's order.

But if, as we believe, the conviction must rest on the evidence as of July 21, 1930, and the circumstances as of that date, the following facts appear: At that time, both of the parties had remarried. The accused had been married about four years, and his family consists of his wife and her two minor children. The only proof submitted or relied upon by complainant that accused was then in contempt of court and able to pay her claims was that he was in some degree, not shown by the evidence, supporting his present family. He admitted he was supporting them, but stated he could only get work on a part-time basis, and that all his earnings were required for the support of that family; that he had no other means or resources. He had given complainant the residence and furniture when they separated. Moreover, in the passing of years, Allen Woodworth, Jr., for whose support the order in question was made, had reached nearly 18 years of age and was then living and provided for in the home of his grandparents, the parents of the accused. There is no proof that the complainant has to use, or would now use, $25 per month or $2,075, or any other amount, for the maintenance of Allen, Jr.; or that she expects him to live with her.

The debt as of July 21, 1930, was stated to be $2,075. There is not the slightest evidence that the accused could by any possibility pay such an amount. Yet on that date he could not have absolved himself from the charge against him by paying any lesser sum as the record stood. Therefore, the jury in reaching their verdict must have based it upon the evidence reaching back over a period of eleven years, and then at no particular period of time, when the debt was presumably more commensurate with the ability and means of the accused to pay. In the absence of any clear statement of the issues or the charge, the jury may have concluded that, despite the vagueness and uncertainty of the evidence, the accused could at some of the time covered by the complaint have paid more than he did.

Such a conclusion or verdict violates cer-

tain inherent rights guaranteed by our statute to secure the fundamentals of a fair trial. Section 2886, O. S. 1931, provides that an information must charge but one offense. In Lawrence v. State, 39 Okla. Cr. 229, 264 P. 214, it was held:

"Where language of an information is uncertain as to whether it charges more than one offense and record discloses defendant was tried for more than one offense, conviction cannot be sustained."

Section 2725, O. S. 1931, provides:

"In all other cases (than murder) a prosecution for a public offense must be commenced within three years after its commission."

The accused is also entitled to a clear statement, without duplicity or ambiguity, of the facts constituting the charge against him.

Lord Erskine, in the trial of John Took, said:

"It is the glory of the English Law that it requires, even in the commonest cases, the utmost precision of charge, and a proof correspondingly precise; hitting the bird in the very eye; strictly conformable not merely to the substance of the crime, but to the accusing letter."

The language is applicable to the requirements of our own statute on indirect contempt as construed by this court in Morgan v. Bank, supra. And as the purpose of the proceeding is to vindicate the authority of law and the dignity of the court, the conviction for that purpose should not be permitted to stand upon a record that reveals the violation of those legal rights of the accused deemed of such honor to our system of jurisprudence. The failure of counsel to take formal exceptions at the trial should not control the effect of such inherent errors, where an inspection of the entire record convinces us that the essential elements of a fair trial were wanting and that the errors noted became part and substance of a verdict wherein the complaint and the evidence are not conformable one to the other. The evidence does not sustain any charge that the jury had a right to consider, or as to which the defendant was put upon his proof.

It follows that the judgment of the trial court should be reversed and remanded. It is so ordered.

The Supreme Court acknowledges the aid of Attorneys Rollin E. Gish, E. P. Marshall, and T. Austin Gavin in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Gish and approved by Mr. Marshall and Mr. Gavin, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS, PHELPS, and CORN, JJ., concur.